OPINION OF THE COURT
Vincent W. Versaci, S.
Petitioners, Gregory Hennel and Gary Hennel, two grandchildren of the decedent, Edmund Hennel, commenced this proceeding pursuant to SCPA 1809 to determine the validity of their claim against the estate for satisfaction of an outstanding mortgage encumbering certain real property that the decedent conveyed to the petitioners four years prior to his death. The petitioners’ claim also seeks reimbursement for the mortgage payments they have paid since the decedent’s date of death, with interest from the date of each such payment. The petition *550 ers allege four causes of action sounding in (1) breach of contract; (2) breach of title warranty and the covenant of quiet enjoyment; (3) promissory estoppel; and (4) unjust enrichment. In addition, the petitioners seek an award of attorneys’ fees on their second cause of action for breach of warranty.
Respondent, Hazel Hennel, the executrix of the estate, filed objections to the petition, denying that the petitioners have a valid claim against the estate. The respondent also asserted various affirmative defenses including the lack of standing of the petitioners, the statute of limitations, laches, and the statute of frauds. Following discovery, both parties moved for summary judgment pursuant to CPLR 3212. The motions have been fully briefed, and the court has had due deliberation thereon.
In support of their claim, the petitioners allege that at some time during the summer months of 2006, discussions began between them and the decedent regarding a multi-unit apartment building located at 233 Jackson Avenue in Schenectady, New York that was owned by the decedent. The petitioners claim that the decedent was looking for someone to take over the management and/or ownership of this rental property for him. Pursuant to these discussions, the petitioners allege that they entered into an agreement with the decedent wherein it was agreed that the petitioners would accept title to the property with a reservation of a life estate to the decedent. Further, it was agreed that the petitioners would take over all of the management responsibilities of the above-noted property for the decedent during his lifetime in exchange for the decedent’s promise to pay off a mortgage that was existing on the property at the time of his death from assets remaining in his estate.
This mortgage, that was in the original amount of $100,000, had been taken against the property by the decedent in 2001. The petitioners allege that the decedent used the proceeds of the mortgage to make cash gifts to six family members, including the two petitioners, who in turn invested this money into the Stadium Golf Course, a family-run business. The decedent refinanced the mortgage with Trasteo Bank in 2003. Over the course of time but prior to September 2006, four of the six family members (those besides the petitioners) separated from the business, at which time the money they respectively invested was paid back to them by the petitioners. The petitioners stayed with the business and continue to run the business to this day.
The petitioners had full knowledge of the mortgage and the purpose for which the proceeds were used by the decedent. They *551 were not willing to assume the outstanding balance of the mortgage or be personally obligated to this debt because they had their own debts, in part, from buying the other family members out of the business. Notably, if they assumed the mortgage, they would in essence be subsidizing the gifts made by the decedent to the other family members from the mortgage proceeds, which they viewed as, in essence, paying the debt twice. The petitioners claim that they only agreed to accept title with the above-noted encumbrance and requisite management responsibilities of the property because of the decedent’s promise that the mortgage balance remaining at the time of his death would be paid off by his estate, terms to which the decedent purportedly agreed.
To memorialize and consummate this agreement, the family’s attorney, Frank Parisi, was contacted for the purpose of preparing the necessary legal documents. On September 22, 2006, the decedent and the petitioners met at attorney Parisi’s law office to sign the documents his office had prepared. All of the documents were signed together while the parties were seated at the conference table. First, the decedent signed a warranty deed conveying title to the Jackson Avenue property to the petitioners, reserving a life estate for himself. The deed contained the standard covenant language that “the parties of the second part [the petitioners] shall quietly enjoy the same premises,” and that “the party of the first part [the decedent] will forever warrant the title to said premises.” Notably, the deed did not contain an assumption of mortgage clause. The deed was properly notarized by attorney Parisi and later recorded in the Schenectady County Clerk’s Office.
Along with the signing of the deed, two other real estate forms, the Real Property Transfer Report (RP-5217) and the Combined Real Estate Transfer Tax Return (TP-584), were also signed by the decedent and the petitioners. Notably, the RP-5217 form indicates that the transfer is between relatives, and does not state a sales price. The TP-584 form reports that there is no continuing lien deduction and that the transfer is not subject to an outstanding credit line mortgage.
Simultaneously with the signing of the above documents, the decedent executed a last will and testament, also prepared by attorney Parisi. This document was shown to the petitioners at the conference table and contained the following provision at article fifth: “I direct that the mortgage on the property at 233 Jackson Avenue, Schenectady, New York, if any, in existence at *552 the time of my death shall be paid from the assets of my estate.” These were the only documents that were signed that day.
Within a few days after the signing of these documents, the decedent gave to the petitioners a personal check with which to open a bank account for the management of the property. From this point going forward, the petitioners took over and assumed all of the management responsibilities of the property, thereby permanently relieving the decedent of these same responsibilities. The petitioners used the initial deposit monies given to them by the decedent to pay the taxes on the property as well as the monthly mortgage payment then due. They continued to use this account to deposit the rent proceeds from the property and pay all of the bills associated with the property.
The petitioners took over every aspect of managing the property. They maintained the tenant leases and rent roll; paid the property taxes, insurance, utilities and other carrying charges; arranged for repairs, maintenance and capital improvements to the property; managed the cash flow; dealt with tenants who did not pay rent, damage to apartments, evictions, and theft of tenant property; and handled all security and parking issues. All of these responsibilities consumed much of their time, for which they received no compensation. It was by all accounts a “break even business.”
From September 2006 to the date of the decedent’s death on December 1, 2010, the decedent continued to reside in one of the apartments at the Jackson Avenue property rent free, and free of all property management responsibilities, while the petitioners continued to perform all of the responsibilities of the management of the property as they had agreed to do, without charge.
However, roughly two years after the deed and will were executed in attorney Parisi’s law office, the decedent went to a different attorney (the attorney who represents the executrix) and executed a new will on October 22, 2008. The new will, which was admitted to probate on April 26, 2011, does not contain the same language that appears in article fifth of the September 22, 2006 will or anywhere mention the Jackson Avenue property or the mortgage existing thereon. The 2008 will only contains the general provision in its article first that the decedent “direct[s] payment of any and all just debts and funeral expenses as soon as practicable after [his] death.” Based on this omission from the 2008 will, the executrix rejected the petitioners’ claim for payment of the outstanding mortgage, necessitating the instant proceeding.
*553 The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any genuine material issues of fact. (See Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) If the proponent makes such a prima facie showing, the burden shifts to the party opposing the motion to come forward and lay bare his or her evidentiary proof in admissible form sufficient to establish the existence of genuine material issues of fact which require a trial. (See Alvarez v Prospect Hosp. at 324; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt, L.P., 7 NY3d 96, 105 [2006]; Martin v Briggs, 235 AD2d 192 [1997]; McArdle v M & M Farms of New City, 90 AD2d 538 [1982].) However, mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman v City of New York.)
The facts underlying this proceeding as recited above in support of the petitioners’ claim are not in dispute, at least not to any relevant degree. Given the absence of any genuine material issues of fact, a trial is unnecessary. The only issues that need to be addressed in deciding this matter are purely issues of law, thus rendering this matter ripe for summary judgment.
Despite the respondent’s failure to dispute any of the relevant facts, the respondent does not concede that a valid contract or agreement existed between the decedent and the petitioners, and claims rather that the decedent’s transfer of the Jackson Avenue property to the petitioners was simply a gift, subject to the mortgage. The respondent argues that even if the decedent made an oral promise to pay off the mortgage on the property at the time of his death, that promise is not binding or enforceable due to the lack of consideration on the part of the petitioners and by virtue of the fact that such promise is not in writing and therefore is in violation of the statute of frauds. The respondent further argues that the decedent’s 2006 will does not satisfy the requirement of a writing because it does not explicitly recite the entire agreement of the parties and, in any event, wills by their nature are portable and can be changed and/or revoked by the testator at any time up until death.
The court fully acknowledges that wills are ambulatory during the lifetime of the testator and only take effect upon death *554 (see EPTL 1-2.19 [a]). However, despite this well settled principle and despite the absence of a written contract per se, the court finds that the decedent and the petitioners did enter into a valid agreement concerning the Jackson Avenue property. This conclusion is supported by the undisputed fact that the deed and will were executed contemporaneously, or with one another; the subsequent acts and conduct of the decedent and petitioners; and the deposition testimony of attorney Parisi who corroborates the position of the petitioners. In light of these facts and circumstances taken in totality, the court finds that the most equitable resolution is to find an agreement was consummated between the parties.
More specifically, attorney Parisi testified at his deposition that he represented all of the parties to this proceeding whom asked him to prepare the 2006 will and deed as drafted for Edmund Hennel’s signature. Attorney Parisi confirmed that the petitioners were in the conference room at the time the deed and will were signed by Edmund Hennel, and that there was a discussion between the parties while seated at the conference table about the purpose of the meeting. The discussion “pertained to maintenance of a building on Jackson Avenue owned by Edmund Hennel and the manner in which the two boys, Gary and Greg, were going to take care of the maintenance, rents and expenses.” (May 1, 2012 tr at 8.)
Attorney Parisi further stated that “there was a discussion about [the deed] along with the will . . . Mr. Hennel was entrusting Gregory and Gary to care for the property so long as he was alive, and he reserved a life estate in the property.” (May 1, 2012 tr at 9.)
Attorney Parisi testified that it was his understanding from what the parties told him that part of the transaction was a transfer of the responsibility of collecting the rents from Edmund Hennel to Gary and Gregory Hennel. He stated that he “was told to put paragraph fifth into the will [which] was all part of a transaction whereby Edmund Hennel could relieve himself of many duties with regard to the property, and it would be taken over by the boys.” (May 1, 2012 tr at 10-12.)
When asked the question: “Was the provision in the will in Article Fifth designed to ensure that ultimately Gary and Gregory Hennel would be vested with the property at the termination of Edmund’s life estate free of any mortgage that Edmund Hennel placed on the property,” attorney Parisi responded: “That was my understanding from what they told me.” When *555 asked the question: “Was the mortgage provision in the will, namely Article Fifth, and the quiet enjoyment and warranty provisions in the deed meant to work together and be read consistently with each other,” attorney Parisi responded: “I believe so.” (May 1, 2012 tr at 13-14.)
Attorney Parisi also confirmed that all of the documents he had prepared with respect to this transaction were signed at the same time, one following the other. (May 1, 2012 tr at 15.) When asked whether he knew what the relationship was between the parties, attorney Parisi answered: “Grandfather and grandchildren,” and that from what he observed, they were “very close.” (May 1, 2012 tr at 17.)
The respondent’s argument that there was no valid agreement between the decedent and the petitioners is belied by attorney Parisi’s deposition testimony and his authentication of the deed and the will and the purpose for which they were prepared and executed. The testimony of attorney Parisi, who is a disinterested, nonparty witness, is not barred by the Dead Man’s Statute and is competent evidence establishing the existence of a valid agreement between the parties. (See CPLR 4519; 58A NY Jur 2d, Evidence and Witnesses § 920 [2011 ed]; see also Miller v Lu-Whitney, 61 AD3d 1043 [2009]; Estate of Goth v Tremble, 59 AD3d 839 [2009].)
The respondent’s arguments that the petitioners’ breach of contract claim fails due to lack of consideration and that the petitioners have not shown part performance sufficient to overcome a statute of frauds defense must also fail. These arguments are quickly dispelled by attorney Parisi’s testimony as to the terms of the agreement and the undisputed performance of the property management responsibilities by the petitioners since entering into the agreement with the decedent.
It is black letter law that in order for a contract to be binding and enforceable, there must be consideration. (22 NY Jur 2d, Contracts § 11 [1996 ed].) “Consideration may take the form of either a promise or performance, and has been said to consist of what is actually given or suffered and accepted for a promise. It is, in effect, the price bargained and paid for a promise.” (22 NY Jur 2d, Contracts § 75 [1996 ed].)
The consideration given by the petitioners here was not in the form of a purchase price as one would typically see in an arm’s length transaction to buy and sell real estate between strangers. This was an agreement between family members, wherein the grandfather deeded property over to his grandchil *556 dren, retained a life estate in the property, and agreed to pay off the lien on the property at the time of his death if his grandchildren managed and maintained the property for the remainder of his life. The petitioners’ consideration for the decedent’s promise to pay was the assumption of all the property management responsibilities. In essence, the promise and the consideration were each the motive for the other, as confirmed by attorney Parisi’s testimony that these were the terms of the parties’ agreement.
The petitioners’ consideration for the contract also constitutes the petitioners’ part performance of the parties’ agreement. In order for part performance to render an alleged oral agreement enforceable under the statute of frauds, it must be “unequivocally referable” to the agreement. (See 61 NY Jur 2d, Frauds, Statute of § 249 [1987 ed].) Acts or conduct that is not directly related to a prior oral agreement will not constitute part performance thereof. (Id.)
The petitioners fully performed all of the property management responsibilities for the decedent from September 2006 until the time of his death, which performance was fully accepted by the decedent as undisputed in the record. The petitioners’ performance of these responsibilities was in direct reliance on, and exclusively related to the decedent’s promise to pay off the mortgage debt at the time of his death. Thus, the requirement that part performance of an oral contract must refer unequivocally to the agreement itself is satisfied here as established by the deposition testimony of attorney Parisi regarding the terms of the agreement, and as further proven by the deed and will which were executed by the decedent at the same time. This evidentiary proof makes this case different from the cases cited by the respondent and requires a different outcome. (Cf. Burns v McCormick, 233 NY 230 [1922]; Matter of Buehler, 274 App Div 770 [1948]; George v Dobson, 261 App Div 447 [1941]; Hunt v Hunt, 55 App Div 430 [1900].) The petitioners’ performance of their part of the agreement was unequivocally referable to the agreement itself, rendering it enforceable under the statute of frauds.
While the court acknowledges that there is no comprehensive, written contract, signed by all parties, delineating the terms of their agreement, this is not to say that there is no evidence in writing that a valid agreement existed. “A binding agreement may be assembled from more than one writing, even if all are not signed by the party against whom enforcement is *557 sought.” (22 NY Jur 2d, Contracts § 11 [1996 ed].) “A contract may also be constituted from several different writings. The writing in a written contract is not the contract but the evidence of it.” (22 NY Jur 2d, Contracts § 15 [1996 ed].)
The written evidence that a binding agreement existed between the decedent and the petitioners consists of the deed and the 2006 will. These formal, legal documents that were prepared by an attorney, were executed by the decedent at the same time and place as part and parcel of the same transaction, and therefore constitute a single transaction. The decedent was under no independent obligation to execute a will at the same time as the deed was executed. Nor was the decedent independently obligated to include a provision in his will for the payment of the mortgage from the assets of his estate. There is no logical explanation for why the will containing a specific provision for payment of the mortgage by his estate was executed along with the deed other than that these two documents, when read together, were meant to memorialize the agreement reached between the parties.
Having found that a valid and binding agreement between the parties has been proven despite the absence of a written contract, the court finds that the respondent should not be allowed to avoid performance of the decedent’s promise by raising a statute of frauds defense. Accordingly, based on the facts of this case, the court finds that it should invoke the equitable doctrine of promissory estoppel and sustain the petitioners’ claim.
“Promissory estoppel may provide a remedy in the absence of a contractual obligation, based on a person’s reliance on an unambiguous promise. It arises out of a breached promise in circumstances under which it is fair to hold the promisor to the terms of his or her promise. Recovery under the theory of promissory estoppel is not dependent on the existence of a contract.” (57 NY Jur 2d, Estoppel, Ratification, and Waiver § 49 [2000 ed].)
“To establish a promissory estoppel, the person claiming estoppel must identify a clear and unambiguous promise from the person to be estopped, on which the person claiming estoppel reasonably relied to his or her detriment. The doctrine of promissory estoppel applies to a limited class of cases in which a person to whom a promise is made has suffered unconscionable injury or has prejudicially changed *558 his or her position as a result of his or her reliance on the promise.” (57 NY Jur 2d, Estoppel, Ratification, and Waiver § 50 [2000 ed]; see also R. Freedman & Son v A.I. Credit Corp., 226 AD2d 1002, 1003 [1996]; Tierney v Capricorn Invs., 189 AD2d 629 [1993], lv denied 81 NY2d 710 [1993]; Ripple’s of Clearview v Le Havre Assoc., 88 AD2d 120, 122 [1982], lv denied 57 NY2d 609 [1982].)
This case falls squarely within that limited class of cases where promissory estoppel should be applied to remedy a potential injustice. The facts of this case are not like the facts in the case cited by the respondent where there was only vague, nonspecific parol evidence presented by an interested witness. (Cf. Sanyo Elec. v Pinros & Gar Corp., 174 AD2d 452 [1991].) Here, there is objective testimony from a disinterested witness supported by documentary evidence of a clear, specific and unambiguous promise by the decedent to pay off the mortgage at the time of his death. The petitioners reasonably relied on this promise which was made simultaneously with the conveyance of the property to them without an assumption of the mortgage debt and at the time they took over all of the management responsibilities of the property. Under these circumstances, the petitioners were justified in relying on the very specific language contained in article fifth of the will which was drafted by the family’s attorney, executed by the decedent in front of the petitioners under the supervision of their mutual attorney, at the same time that title was conveyed to them. It was absolutely foreseeable, especially given the fact that the parties were family, that the petitioners were relying on the oral promise of their grandfather, which promise he memorialized in article fifth of his 2006 will.
The court further finds that in reliance on their grandfather’s promise, the petitioners significantly changed their position to their detriment by causing them to undertake responsibilities they otherwise would not have undertaken without this promise. The petitioners represent that the only reason they agreed to take title with the mortgage while also accepting the time-consuming responsibilities of managing the decedent’s life estate, without compensation, was knowing that upon the decedent’s death, they would own the property free and clear. The decedent’s promise clearly induced the petitioners into changing their position to their detriment, and if the decedent is not held to his end of the bargain, the petitioners will suffer *559 unconscionable harm by having to pay off a sizable mortgage that they never agreed to be responsible for.
It is important to note that the decedent’s promise to pay off the mortgage upon his death, as memorialized in article fifth of the will, does not equate or convert to a promise to never revoke or change that will. The court has already acknowledged that wills are portable and can be revoked or changed at any time during the life of the testator, which the decedent in fact did by executing his 2008 will. However, the execution of a new will, that omitted any mention of his estate’s obligation to pay off the mortgage, does not and cannot serve to repudiate his prior promise to pay off the mortgage. Again, the decedent’s 2006 will was not the contract; it is merely written evidence of the parties’ agreement, which the decedent cannot unilaterally change by revoking his promise that was reasonably relied upon by the petitioners to their detriment. “[N]o one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. The Statute of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice.” (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 185-186 [1982] [citations omitted].)
The Surrogate’s Court has full and complete jurisdiction in law as well as in equity to administer justice in all matters properly before it. (SCPA 201; see also Matter of Sturmer, 277 App Div 503 [1950]; Matter of McCoy, 100 Misc 2d 301 [1979].) The equity powers of the surrogate are broad, and can be invoked without limitation to do full and complete justice between the parties. (Id.; see also Matter of Baby Boy C., 84 NY2d 91 [1994]; Matter of Lonas, 197 Misc 678 [1949]; Matter of Beall, 184 Misc 881 [1945]; Matter of Grieco, 172 Misc 723 [1939].) Justice requires the court to apply principles of equity in this case and “not countenance a ritualistic invocation of the Statute of Frauds, especially where the party claiming its protection has acquiesced in and profited [or benefitted] from the very agreement it now seeks to abjure.” (Brockport Devs. v 47 Ely Corp., 82 Misc 2d 310, 315 [1975].) The respondent should be estopped from using the statute of frauds as a shield, or as a sword for that matter, to escape the decedent’s unequivocal promise to pay off the mortgage from the assets of his estate. The petitioners relied upon this promise to their detriment by performing all of the management responsibilities with respect to the subject property. This performance by the petitioners was fully accepted by the decedent for a full four years prior to his *560 death. The decedent should be held to his end of the bargain, and thus the petitioners are entitled to specific performance of the decedent’s promise by his estate.*
It is also worth mentioning here that despite the omission from the decedent’s 2008 will of the language contained in article fifth of his 2006 will, the court finds that the mortgage debt is a “just debt” of the decedent and must be paid by the estate pursuant to article first of the 2008 will. The respondent argues that the language of EPTL 3-3.6 serves to remove the mortgage from the general provision in the will for the payment of debts and that the estate is not responsible for the satisfaction of this encumbrance unless the probated will specifically indicates otherwise.
However, EPTL 3-3.6, by its explicit language, only applies to “property specifically disposed of by will or passe[d] to a distributee.” (EPTL 3-3.6 [a].) Since the Jackson Avenue property was conveyed by warranty deed to the petitioners by the decedent four years prior to his death, this property did not pass by will or intestacy and never became part of the decedent’s estate. Therefore, EPTL 3-3.6 does not apply to the mortgage on the Jackson Avenue property. Since the petitioners did not assume the mortgage when accepting title to the property, and the note that the decedent gave to Trustee Bank is a “just debt” of the decedent, the estate is obligated to pay the outstanding balance of the note, which would in turn discharge the mortgage on the property.
Lastly, with respect to the petitioners’ second cause of action for breach of title warranty and the covenant of quiet enjoyment, the court finds that this cause of action should be dismissed. These covenants as contained in the warranty deed given to the petitioners were not breached by the decedent. The decedent did convey good and marketable title, albeit subject to an encumbrance. The deed did not contain a warranty against encumbrances, and the petitioners had full knowledge of the mortgage when they accepted the deed. They cannot now use the title warranty clause to claim a breach by the decedent.
Nor did the decedent breach the covenant of quiet enjoyment by conveying property to the petitioners that had an outstand *561 ing mortgage of which the petitioners were aware. There has been no ouster or dispossession from the property as required in order to prevail on a claim for breach of the covenant of quiet enjoyment. (Green v Collins, 86 NY 246 [1881]; Scriver v Smith, 100 NY 471 [1885].)
Accordingly, based on all of the foregoing, the petitioners’ claim against the estate is hereby determined to be valid and enforceable. The petitioners’ motion for summary judgment is hereby granted, and the respondent’s cross motion for summary judgment is hereby denied. The respondent is hereby ordered to satisfy and pay the petitioners’ claim from the assets of the estate in the amount of the outstanding balance of the mortgage held by Trustco Bank against the Jackson Avenue property. The respondent is also hereby ordered to reimburse to the petitioners from the assets of the estate, the total amount of the mortgage payments paid by the petitioners since the decedent’s date of death. Pursuant to CPLR 5001 (a) and the court’s discretion thereunder, interest thereon shall be computed from the date of each such payment at the rate of 6%, that being the interest rate of the note and mortgage. In the event the respondent does not satisfy and pay the petitioners’ claim within 60 days of the date of this decision, the petitioners will have the right to seek a judgment against the estate in the amount of the claim as determined herein.
Since the court dismissed the petitioners’ second cause of action for breach of title warranty and the covenant of quiet enjoyment, the petitioners’ request for an award of attorneys’ fees is hereby denied.
The parties’ remaining arguments, to the extent not specifically addressed herein, have been considered and found to be unavailing.

 In fact, the respondent’s counsel during oral argument in essence conceded that a valid agreement existed between the parties but not in proper, written form. Given the totality of the facts and circumstances of this case, such a “form over substance” argument cannot be countenanced by this court.