This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 78
In the Matter of the Estate of
Edmund Felix Hennel, Also Known
as Edmund Hennel, Deceased.

Gregory Hennel et al.,
          Respondents;

Hazel Hennel, as Executor of the
Estate of Edmund Felix Hennel,
Deceased,
          Appellant.


          Peter V. Coffey, for appellant.
          Robert L. Adams, for respondents.


FAHEY, J.:

          Petitioners seek to enforce an oral promise that would

otherwise be void under the statute of frauds.  They rely on the

theories of promissory estoppel and unconscionability.  We agree,

as a general matter, that where the elements of promissory

estoppel are satisfied and enforcement of the statute of frauds

- 1 -

would inflict such an unjust and egregious result upon the party who detrimentally relied on the oral promise that the resulting injury would be unconscionable, the opposing party may be estopped from relying on the statute of frauds. Nevertheless, we conclude that petitioners cannot invoke that doctrine here because application of the statute of frauds would not inflict an unconscionable injury upon petitioners. Although the result may be unfair, it is not unconscionable.

## I.

Decedent Edmund Felix Hennel was the owner of a four-unit apartment building (the property) located in Schenectady. Petitioners, decedent's grandsons,[1] assert that prior to 2006, they had assisted decedent with maintenance of the grounds and snow removal at the property, but had no responsibility for other maintenance duties or rental management. In the summer of 2006, decedent approached petitioners about taking ownership of the property and assuming all management and maintenance duties.

The property was subject to a mortgage. In 2001, decedent had obtained a $100,000 loan, secured by a mortgage on the property. Decedent used the loan proceeds to make cash gifts to six of his family members, including the two petitioners, all of whom were shareholders in the family-owned golf course business. These six shareholders in turn loaned their cash gifts

_____

[1] Petitioner Gary J. Hennel died while the appeal was pending in the Appellate Division, and his estate was substituted as a petitioner.

to the golf course business to assist it with operations and provide it with additional working capital. After subsequent disagreements regarding business operations, the shareholders agreed that the company would redeem the shares of the four shareholders other than petitioners. The golf course business repaid those four shareholders for their loans in an amount totaling $63,619.64, leaving petitioners as the sole shareholders of the business by May 2006. Petitioners assert that they explained to decedent that they did not wish to take ownership of the property subject to the mortgage because they believed they would be subsidizing the gifts to the four other former shareholders.

According to petitioners, decedent, in response to their concerns, stated that it was not his intention that petitioners would become responsible for the mortgage. Specifically, decedent orally promised that he would direct his estate to satisfy the balance of the mortgage upon his death from the assets of his estate.

To effectuate this oral bargain, petitioners and decedent met on September 22, 2006 in the office of a family attorney. They executed several documents at that meeting. One of those documents was a warranty deed, in which decedent granted ownership of the property to petitioners. The deed did not mention the mortgage, and it stated that the consideration for the transaction was one dollar. Decedent reserved to himself a

life estate in the property.  The deed further reserved to decedent the power to appoint the remainder interest to any of his issue other than petitioners during his lifetime.  Decedent never exercised that power.

At that same meeting, decedent also executed a will (the 2006 will).  As relevant here, the 2006 will provided that the mortgage on the property, if any in existence at the time of decedent's death, be paid from the assets of his estate.

After the September 2006 meeting, petitioners assumed all management and maintenance duties for the property.  They managed income and expenses, handled tenant relations, and made improvements and necessary repairs.  Petitioners assert that these activities occupied a significant amount of their time.  Petitioners also began making the mortgage payments, which they were able to do entirely with the rental income generated by the property.

In 2008, decedent executed a new will (the 2008 will), which revoked all prior wills and codicils.  The 2008 will made no mention of satisfaction of the mortgage on the property upon decedent's death.  Petitioners assert that decedent informed them that he had executed a new will but assured them that there had been "no change" in their agreement with respect to the property.  Based on that assertion, petitioners continued to carry out their management and maintenance responsibilities at the property.

Decedent died on December 1, 2010.  Decedent's widow,

respondent Hazel Hennel, was named as the executor of his estate in the 2008 will and sought probate. In anticipation of a contest, the 2008 will was admitted to probate and letters testamentary were issued to respondent with the limitation that no assets of the estate could be distributed absent a court order. After filing a claim pursuant to SCPA 1803, which respondent rejected, petitioners commenced the present proceeding pursuant to SCPA 1809 to determine the validity of their claim against decedent's estate. Their petition included four causes of action: breach of contract, breach of title warranty, promissory estoppel, and unjust enrichment. Respondent objected, asserting, as relevant here, that petitioners' claim was barred by the statute of frauds.

Both parties subsequently moved for summary judgment. Petitioners supported their motion with, among other things, the deposition testimony of the family attorney, who confirmed the details of the meeting at his office on September 22, 2006, including decedent's execution of the 2006 will. The attorney testified that it was his understanding that the relevant provision in the 2006 will was designed to ensure that petitioners would own the property free of any mortgage upon decedent's death.

In her cross motion for summary judgment, respondent did not dispute petitioners' factual allegations. In support of her cross motion, however, she relied in part upon a residential

appraisal report of the property assessing market value for the
property at the time of decedent's death at $235,000.
Petitioners stated in their notice of claim that the unpaid
principal and interest on the mortgage was $88,394.91.  At the
time of petitioners' summary judgment motion, their continued
payments had reduced that balance to $82,194.57.

Surrogate's Court granted petitioners' motion for
summary judgment and directed respondent to satisfy the
outstanding balance of the mortgage and reimburse petitioners for
the payments made since decedent's death.  The court reasoned
that petitioners' claim fell "squarely within that limited class
of cases where promissory estoppel should be applied to remedy a
potential injustice" (Matter of Hennel, 40 Misc 3d 547, 558 [Sur
Ct, Schenectady County 2013]).

On appeal, a divided Appellate Division affirmed
(Matter of Hennel, 133 AD3d 1120 [3d Dept 2015]).  The Appellate
Division agreed with respondent that "decedent never gave up his
right to revoke the provision of the 2006 will regarding the
satisfaction of the mortgage in writing, and that his oral
commitment to do so runs afoul of the statute of frauds" (133
AD3d at 1122).  The court therefore acknowledged that petitioners
were obligated to "bring this case within an exception to the
statute of frauds" (id.).  The court concluded that petitioners
had done so, however, by establishing that the elements of
promissory estoppel were met and that application of the statute

of frauds would be unconscionable under the circumstances (see id. at 1122-1123).  The dissenting Justices would have held that application of the statute of frauds would not inflict an unconscionable injury upon petitioners, and therefore petitioners could not rely on promissory estoppel to enforce their oral bargain with decedent (see id. at 1124-1126 [Garry, J.P., dissenting]).

Respondent appealed to this Court as of right pursuant to CPLR 5601 (a).  We now reverse.

## II.

Petitioners concede that the statute of frauds would generally bar reliance on their oral bargain with decedent.  As the Appellate Division acknowledged, wills are ambulatory in nature, and decedent was free to revoke or alter his 2006 will until his death (see Matter of American Comm. for Weizmann Inst. of Science v Dunn, 10 NY3d 82, 92 [2008]).  Petitioners do not allege that decedent promised never to revoke or alter his 2006 will.  In any event, Estates, Powers and Trusts Law § 13-2.1 (a) (2) requires every agreement or promise to make a "testamentary provision of any kind" to be in writing.  General Obligations Law § 5-701 (a) (1) further requires any agreement or promise that "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" to be in writing.  The Appellate Division therefore correctly held that "petitioners were obliged

to bring this case within an exception to the statute of frauds" (Hennel, 133 AD3d at 1122).

Petitioners attempted to do so by relying on the doctrine of promissory estoppel.  Although respondent agrees that the statute of frauds will not apply if petitioners can establish the elements of promissory estoppel and that they would otherwise suffer unconscionable injury, this Court has not yet expressly recognized this principle.  We adopt it now, for several reasons.

The Restatement (Second) of Contracts endorses the principle that a promise inducing reasonable reliance "is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise" (Restatement [Second] of Contracts § 139 [1]; see also 10 Richard A. Lord, Williston on Contracts §§ 27:14-27:15, at 185-206 [4th ed 2011]; 4 Corbin on Contracts § 12:8, at 38-44 [1997]).  This Court has previously cited section 139 of the Restatement with approval (see Farash v Sykes Datatronics, 59 NY2d 500, 504-505 [1983]).

This Court has also recognized that the related doctrines of equitable estoppel and part performance may preclude application of the statute of frauds under certain circumstances (see e.g. American Bartenders School v 105 Madison Co., 59 NY2d 716, 718 [1983], affg 91 AD2d 901 [1st Dept 1983]; Anostario v Vicinanzo, 59 NY2d 662, 663-664 [1983]; Woolley v Stewart, 222 NY 347, 350-351 [1918]; cf. Messner Vetere Berger McNamee

Schmetterer Euro RSCG v Aegis Group, 93 NY2d 229, 234 n 1
[1999]).[2]  Furthermore, the Appellate Division departments have
unanimously recognized that promissory estoppel may preclude
enforcement of the statute of frauds if application of the
statute would result in unconscionability (see e.g. Carvel Corp.
v Nicolini, 144 AD2d 611, 612-613 [2d Dept 1988]; Bernard v
Langan Porsche Audi, 143 AD2d 495, 496 [3d Dept 1988]; American
Bartenders School, 91 AD2d at 902; Buddman Distribs. v Labatt
Importers, 91 AD2d 838, 839 [4th Dept 1982]; Swerdloff v Mobil
Oil Corp., 74 AD2d 258, 261-264 [2d Dept 1980], lv denied 50 NY2d
803, 913 [1980]).

Finally, this equitable doctrine is grounded in sound
principles of fairness.  As this Court has stated in a different
context,

> "The Statute of Frauds was designed to guard
> against the peril of perjury; to prevent the
> enforcement of unfounded fraudulent claims.
> But, as Professor Williston observed: 'The
> Statute of Frauds was not enacted to afford
> persons a means of evading just obligations;
> nor was it intended to supply a cloak of
> immunity to hedging litigants lacking
> integrity; nor was it adopted to enable
> defendants to interpose the Statute as a bar
> to a contract fairly, and admittedly, made'"
> (Morris Cohon & Co. v Russell, 23 NY2d 569,
> 574 [1969], quoting 4 Williston on Contracts
> § 567A, at 19-20 [3d ed 1961]).

In other words, equity "will not permit the statute of frauds to
be used as an instrument of fraud" (Wood v Rabe, 96 NY 414, 425

---

[2] Petitioners did not rely upon equitable estoppel or part
performance below.

[1884]).

We hold that where the elements of promissory estoppel are established, and the injury to the party who acted in reliance on the oral promise is so great that enforcement of the statute of frauds would be unconscionable, the promisor should be estopped from reliance on the statute of frauds.[3]

### III.

Respondent contends that the Appellate Division erroneously concluded that the elements of promissory estoppel were established and that decedent acknowledged a legal obligation to satisfy the mortgage (see Hennel, 133 AD3d at 1122). We need not resolve that question on this appeal, however, because even assuming for the sake of argument that petitioners established the elements of promissory estoppel, and viewing the facts in the light most favorable to petitioners, petitioners would not suffer unconscionable injury if the statute of frauds were enforced. Petitioners' motion for summary judgment therefore should have been denied, and respondent is

---

[3] To the extent the Restatement (Second) of Contracts § 139 permits circumvention of the statute of frauds where mere "injustice" not rising to the level of unconscionability would result, we decline to adopt it. We also address on this appeal the doctrine of promissory estoppel only insofar as it is used to estop reliance on the statute of frauds. We do not address the use of promissory estoppel in other contexts in which the statute of frauds is not involved (see generally Restatement [Second] of Contracts § 90; Swerdloff, 74 AD2d at 261-263; Merex A.G. v Fairchild Weston Systems, Inc., 29 F3d 821, 824-825 [2d Cir 1994], cert denied 513 US 1084 [1995]).

entitled to summary judgment.

In the similar context of unconscionable contracts, we have stated that an unconscionable agreement is

> "one such as no person in his or her senses
> and not under delusion would make on the one
> hand, and as no honest and fair person would
> accept on the other, the inequality being so
> strong and manifest as to shock the
> conscience and confound the judgment of any
> person of common sense" (Christian v
> Christian, 42 NY2d 63, 71 [1977] [internal
> quotation marks, brackets, and citations
> omitted]; see generally Gillman v Chase
> Manhattan Bank, 73 NY2d 1, 10-12 [1988];
> Mandel v Liebman, 303 NY 88, 94-96 [1951]).

The standard for unconscionability where one party is seeking to avoid the statute of frauds must be equally demanding, lest the statute of frauds be rendered a nullity.  As the Second Circuit aptly observed in Philo Smith & Co. v USLIFE Corporation (554 F2d 34 [2d Cir 1977]):

> "The strongly held public policy reflected in
> New York's Statute of Frauds would be
> severely undermined if a party could be
> estopped from asserting it every time a court
> found that some unfairness would otherwise
> result. For this reason, the doctrine of
> promissory estoppel is properly reserved for
> that limited class of cases where the
> circumstances are such as to render it
> unconscionable to deny the promise upon which
> the plaintiff has relied" (id. at 36
> [internal quotation marks omitted]).

Petitioners' proof here "fell well short" of demonstrating an unconscionable injury sufficient to estop respondent's reliance on the statute of frauds (id.). Importantly, petitioners were able to make the mortgage payments

entirely from the rental income generated by the property. Petitioners do not allege that they expended any personal funds to pay the mortgage or manage and maintain the property (cf. Castellotti v Free, 138 AD3d 198, 204-205 [1st Dept 2016]; Fleet Bank v Pine Knoll Corp., 290 AD2d 792, 796-797 [3d Dept 2002]). In addition, petitioners do not allege that there is any reason to believe that the rental income will be insufficient to satisfy the mortgage payments in the future. To the contrary, petitioners characterized the property as a "break even" business.

Although petitioners assert that they expended significant time in managing and maintaining the property, as the Appellate Division dissent noted, "there was no claim that petitioners' management responsibilities were so overwhelming that they were forced to neglect other business responsibilities or sacrifice other opportunities" (Hennel, 133 AD3d at 1126 [Garry, J.P., dissenting]). Furthermore, petitioners' efforts were ultimately to their benefit, as they maintained the value of the property they now own.

Petitioners contend that the key factors establishing unconscionability stem from the use to which decedent put the loan proceeds and the fact that he misled petitioners after he executed the 2008 will. We disagree. The fact that decedent used the loan proceeds to make cash gifts to family members, which they then loaned to the golf course business, is

irrelevant.  Those loans infused the golf course business with desired capital, and petitioners would have been required to buy out the other shareholders regardless of the source of those loans if they were to own the business themselves, as they now do.

Furthermore, assuming that decedent misled petitioners about his 2008 will, petitioners still cannot demonstrate that they will suffer unconscionable injury if the statute of frauds is enforced.  Petitioners did not dispute respondent's appraisal stating that the property was worth approximately $235,000.  If they so choose, petitioners could sell the property, satisfy the balance of the mortgage, and realize the approximately $150,000 of equity remaining in the property.  It bears noting that, because of fluctuations in the real estate market and other eventualities, a remainder interest in a life estate generally does not come with an assurance of any particular amount of equity at the time fee simple ownership is obtained.  That is particularly true here, where decedent had the power to grant the remainder interest to his issue other than petitioners at any time before his death (see Hennel, 133 AD3d at 1124 [Garry, J.P., dissenting]).

Petitioners essentially contend that they were entitled to the full equity of $235,000 in the property pursuant to their oral bargain with decedent, but received only $150,000 in equity instead because decedent failed to fulfill his oral promise to

satisfy the mortgage upon his death.  In short, petitioners allege that they did not receive the full benefit of their oral bargain.  If these facts were sufficient to prevent application of the statute of frauds, the statute of frauds would be "severely undermined" (Philo Smith, 554 F2d at 36).  Whenever an oral agreement is rendered void by the statute of frauds, one or both parties will be deprived of the benefit of their oral bargain, and some unfairness will typically result.  But what is unfair is not always unconscionable.  For these reasons, cases where the party attempting to avoid the statute of frauds will suffer unconscionable injury will be rare.

Here, viewing the facts in the light most favorable to petitioners, application of the statute of frauds does not render a result so inequitable and egregious "as to shock the conscience and confound the judgment of any person of common sense" (Christian, 42 NY2d at 71 [internal quotation marks and alteration omitted]).  Respondent demonstrated that petitioners would not suffer unconscionable injury if the statute of frauds were applied, and petitioners failed to raise a disputed issue of material fact in opposition.

We respectfully disagree with our dissenting colleague that remittal is the appropriate remedy.  Petitioners mentioned "just debts" as a factual assertion in their petition in support of their four causes of action, and they alleged that the obligation to pay the mortgage was a just debt of the estate only

if the court agreed with their position on one of those four causes of action.  Specifically, petitioners alleged that the obligation to pay the mortgage was a "just debt" because "on September 22, 2006, the decedent became bound in contract, by express warranty of title, and by application of common law principles to pay any mortgage existing at death and no unilateral change, by decedent alone, by new Will or otherwise, can prejudice the Petitioners' rights."  Petitioners did not allege that the estate was obligated to satisfy the mortgage as a "just debt" even if decedent had never promised to satisfy the mortgage upon his death, or had not become legally bound by that promise.  Inasmuch as we disagree with petitioners that decedent was bound by their oral bargain, remittal to the Appellate Division to consider the "just debts" issue would be inconsistent with our holding.  In addition, neither party has raised any argument before this Court concerning that issue.

        Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion by respondent for summary judgment dismissing the claim of petitioners granted.

Matter of Estate of Hennel

No. 78

WILSON, J.(dissenting):

I am in the odd position of endorsing everything in the majority's opinion except the result. Instead of reversing, the matter should be remitted to the Appellate Division for resolution of the Surrogate Court's alternative holding -- that decedent's estate was obligated to satisfy the mortgage as a "just debt." The Appellate Division expressly bypassed that issue because of its holding for petitioners on promissory estoppel grounds.

The first article of decedent's Last Will and Testament directs the executor to make "payment of any and all just debts." In Surrogate's Court, petitioners repeatedly argued that the estate should pay the mortgage balance because it was a "just debt." In the opening paragraph of their affidavit supporting their claim pursuant to SCPA 1803, they "demand[ed] that the estate discharge [the mortgage] as a 'just debt' of the estate" (see Aff Supp Not of Claim, dated June 28, 2011, at ¶ 1). Later, they alleged that

- 1 -

because the 2008 Will required the payment of just debts, "and the obligation to pay the mortgage debt at issue is one of those just debts," the estate had an obligation to satisfy it (see id. ¶ 15). Thus, at the time they filed the notice, petitioners "intend[ed] to petition for a construction of the Will's directive to pay 'just debts' as including the obligation to pay this mortgage debt, and seek such other and further relief as is just and proper" (id. ¶ 22).

Later, in their verified petition to adjudicate the notice of claim, petitioners again averred that the estate was required to satisfy the mortgage as a "just debt" (see Verified Petition, dated Dec. 19, 2011, at ¶¶ 2, 18).

After ruling for petitioners on promissory estoppel grounds, the Surrogate's Court's decision and order independently addressed the "just debts" claim, stating that "[i]t is also worth mentioning here that despite the omission from the Decedent's 2008 Will of the language contained in Article Fifth of his 2006 will, the Court finds that the mortgage debt is a 'just debt' of the Decedent and must be paid by the Estate pursuant to Article First of the 2008 Will" (Matter of Hennel, 40 Misc 3d 547, 560 [Sur Ct, Schenectady County 2013]).

The Surrogate's Court then rejected respondent's argument that EPTL 3-3.6 relieved the estate of the obligation to satisfy the mortgage as a just debt, holding that the statute was inapplicable because the property was not "specifically disposed of

by will or pass[ed] to a distributee," and had instead been conveyed by deed, four years before decedent died (see id.). Petitioners all along presented the "just debts" claim as distinct from their promissory estoppel claim, and the Surrogate did the same, grounding it in an interpretation of the decedent's directive in the first article of his 2008 Will.

The Surrogate's Court "exercise[s] full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates" (SCPA 201), and its decision that the mortgage should be paid as a "just debt" is law of the case unless disturbed on appeal. The Appellate Division held that the estate was required to pay the mortgage under principles of promissory estoppel (133 AD3d 1120 [3d Dept 2015]). The majority did mention the "just debts" claim, but expressly avoided it: "As a final matter, respondent asserts that the provision of the 2008 will directing payment of all 'just debts' owed by decedent's estate was inapplicable to petitioners' claim. Even assuming that she is correct, Surrogate's Court remained well within its right 'to determine all matters both legal and equitable necessary to the settlement of a decedent's estate' by directing respondent to satisfy a valid claim against the estate" (id. at 1123, quoting Matter of Garofalo, 141 AD2d 899, 901 [3d Dept 1988]; citing SCPA 201).

The Appellate Division, therefore, did not decide the "just debts" claim, but instead held that even if the first article

of decedent's will did not require payment of the mortgage as a "just debt," the mortgage debt was a "valid claim against the estate" by virtue of the court's holding on promissory estoppel, which the Surrogate's Court had the authority to direct the estate to pay.  The parties did not brief or argue the "just debts" issue in this court, so the Surrogate Court's determination remains law of the case, meaning we cannot reverse and order judgment for respondent.  The correct result here should be to remit the matter to the Appellate Division to determine the "just debts" issue (see Helmsley-Spear, Inc. v Fishman, 11 NY3d 470, 477 [2008] [where Appellate Division found plaintiffs' claim preempted by federal law and did not address additional argument, and this Court reversed on preemption issue, remittal appropriate for "consideration of issues raised but not determined on appeal to that court"]; Lennard v Mendik Realty Corp., 8 NY3d 909, 910 [2007]).

Accordingly, much as it pains me to dissent from a beautifully written majority opinion, I must.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and the motion by respondent Hazel Hennel, as Executor of the Estate of Edmund Felix Hennel, Deceased, for summary judgment dismissing the claim of petitioners Gregory Hennel et al. granted.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Stein and Garcia concur.  Judge Wilson dissents in part in an opinion.  Judge Feinman took no part.

Decided June 29, 2017