OPINION OF THE COURT
Thomas Marcelle, J.
130 Remsen LLC (Remsen) brought a nonpayment proceeding under RPAPL 711 (2) against its tenant Commercial Investigations LLC (Commercial). With the consent of the parties, a trial was held on May 15, 2017. After the trial, the parties submitted summations and legal arguments, and the case was fully briefed on June 5, 2017. Based upon the credible evidence, the court finds the facts as follows.
In July 2011, Commercial entered into a written agreement with R&B Properties (R&B) to lease office space at 130 Rem-sen St., 2nd floor. The lease ran six years until June 30, 2017. At the time the lease was executed, Commercial paid R&B $2,250 as a security deposit.
R&B suffered financial difficulties. Sometime in April 2016, Commercial became aware of a looming foreclosure proceeding. Given R&B’s pending calamity, Commercial was hesitant to pay May’s rent to an entity on the brink of going under. Ultimately, the office building was foreclosed upon. Indeed, a referee foreclosure sale was held in April 2016, where Remsen won the auction. Shortly thereafter, on May 1, 2016, R&B assigned its right to collect rents to Remsen. After the assignment, on May 16, 2016, Remsen closed on the property and acquired legal possession and title to the office building.
Remsen never informed Commercial of the rent assignment. Yet the evidence established three facts—first, sometime in May 2016, apparently after the closing on May 16, Commercial knew that Remsen was now the owner of the building and Commercial’s new landlord; second, Commercial never paid May 2016’s rent to either R&B or Remsen; and third, Commercial faithfully paid its rent to Remsen from June 2016 through March 2017.
*681 What makes this case a case is what happened between the parties from June 2016 to April 2017. Remsen wanted Commercial to agree to a new longer lease. Commercial had reservations—Remsen planned to renovate and to convert the two floors above its office into residential apartments and the noise and other negative externalities from the renovation might have interfered with Commercial’s business operations. To assuage Commercial’s concerns, Remsen offered terms where if Commercial found the renovations disruptive of its business, Commercial could break the lease and vacate without penalty.
In any event, new lease or no new lease, Remsen wanted Commercial to make a new security deposit because R&B had not transferred Commercial’s previous security deposit to Rem-sen. Commercial took the position that it had already paid a security deposit and no new security deposit would be forthcoming. Remsen countered that when it took possession of the building, Commercial became a month to month tenant and if a new lease was not executed together with payment of the security deposit, Remsen would serve Commercial with a 30 day notice to vacate—in other words Remsen told Commercial to pay the security deposit or get out. These communications were made verbally and in voicemails but never in writing.
Discussions of new leases and security deposits ended in January 2017, when Commercial informed Remsen, by written notice, that it would be vacating the office space at the end of March 2017. Commercial did leave the office as promised at the end of March. Remsen had its management company move into the space at the end of April. Remsen demanded May 2016’s and April 2017’s rent. Commercial declined to pay the rent arguing that it had become a month to month tenant and under such a tenancy, it had given Remsen sufficient notice to quit and thus owed no rent. Remsen then instituted this proceeding to collect the rental arrears.
Before addressing the rent issue, the court must ensure it possesses jurisdiction. This case is a nonpayment proceeding brought under RPAPL 711 (2). RPAPL 711 (2)’s primary purpose is to return control of a landlord’s property to him where a tenant has not paid his rent. While a landlord may seek back rent under RPAPL 711 (2), it may not use the statute to collect an overdue debt (Poulakas v Ortiz, 25 Misc 3d 717, 724-725 [Civ Ct, Kings County 2009]). Consequently, “[i]t is a basic premise of landlord-tenant summary proceedings *682 . . . that the person against whom the action is brought be in physical possession of the subject premises at the time the action is commenced in order for the court to obtain jurisdiction” (Torres v Torres, 13 Misc 3d 1167, 1170 [Civ Ct, Kings County 2006]).
Remsen has an issue with timing. Commercial had vacated the office at the end of March and returned the keys no later than April 7. Remsen commenced this summary proceeding on April 18, 2017—after the date that Commercial had already surrendered possession of the office. Thus, the RPAPL does not provide the court with subject matter jurisdiction.
The jurisdictional inquiry does not cease here. While the court cannot hear the case as pleaded, the question becomes whether the court has jurisdiction of this type of claim—a breach of contract (see Matter of Rougeron, 17 NY2d 264, 271 [1966] [explaining that subject matter turns not on the case as pleaded but “th(e) kind of case” in fact]).
This court has “all of the powers that the supreme court would have in like actions and proceedings” (UCCA 212). One power possessed by supreme court is the power to convert proceedings. Indeed, CPLR 103 (c) provides: “If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.”
The court will convert this summary proceeding into a regular civil action. Moreover, since neither the legal issues nor the factual basis of the dispute is altered by changing the form of this case, Commercial has not suffered any prejudice by this conversion.
The court now must decide whether Commercial was a tenant under the lease (and thus owes the rent required by it) or whether Commercial was a month to month tenant (which was properly terminated by notice) and owes no rent. Commercial makes three arguments (some expressed and some implied) that its relationship with Remsen was no longer governed by the lease that it signed with R&B.
First, Commercial argues that the lease with R&B was no longer valid. The argument goes that the lease between R&B and Commercial required that if R&B assigned the rents to another person or entity, R&B had to give Commercial notice of *683 the assignment (exhibit 1, ¶ 13.02).[1] R&B assigned the rents to Remsen (exhibit 2), but gave no notice of this assignment to Commercial. Commercial concludes therefore that since R&B breached the notification of assignment provision of the lease, the lease was broken and no longer valid. Without a valid lease, Commercial maintains that it became a month to month tenant.
The argument is flawed. To begin with, the notice provision provides that upon notice to its tenant of the assignment, the former landlord is off the hook for performance of the lease and the new landlord is on. Thus, the notice provision works solely to protect the old landlord and the provision’s violation causes no impairment of benefits that Commercial derived from the lease. Thus, the breach of this provision by the landlord is immaterial. And here, Commercial never identified any harm it suffered from the breach.[2]
The next issue is whether Remsen’s oral statement that it considered Commercial a month to month tenant rescinded or modified the written lease. When Remsen purchased the property, it inherited all the rights and obligations of the original landlord (see Reltron Corp. v Voxakis Enters., 57 AD2d 134, 138 [4th Dept 1977] [purchaser of property is bound by the lease even in the absence of a formal assignment]). This rule binds the parties to the original lease; Remsen is simply substituted for R&B. Since the lease requires all modifications to it to be *684 made in writing (exhibit 1, ¶ 17.06), Remsen’s parole revocation or modification of the lease is ineffective and unenforceable.
Finally, the court will address whether Commercial can prevail under a theory of promissory estoppel. Promissory estoppel binds a party to a promise made (even without consideration), if the promisor knew that his promise would induce the other party to rely on that promise to the other party’s detriment, i.e., if the promise (1) is clear and unambiguous; (2) induces a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) causes injury as a result of the party’s reliance (Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC, 31 AD3d 983, 986 [3d Dept 2006]).
Remsen leaving a voicemail informing Commercial that it considered Commercial a month to month tenant was the equivalent of a promise that the parties were no longer bound by the written lease. Based on Remsen’s representation, Commercial gave Remsen written sufficient notice to quit the monthly arrangement. Significantly, Remsen neither complained nor objected that the notice was insufficient or out of compliance with the written lease. Therefore, the court concludes that Commercial’s reliance upon Remsen’s representations was reasonable. Finally, Commercial sustained damages because of its reliance—liability for the rent remaining on the lease without use of the office space. In sum, Commercial has proved a claim for promissory estoppel.
But there is a problem—the statute of frauds. The statute of frauds requires a lease longer than one year (and the lease in this case was six years in duration) to be in writing (General Obligations Law § 5-701 [a] [1]). Historically, the law took a dim view of deploying promissory estoppel to displace a written agreement governed by the statute of frauds—as the United States Supreme Court explained: “The doctrine [of promissory estoppel] . . . would subvert the salutary rule, that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent” (Insurance Co. v Mowry, 96 US 544, 547-548 [1877]).
Recently, however, the Court of Appeals cracked the door to allow a promissory estoppel claim to bypass the statute of frauds—“where the elements of promissory estoppel are established, and the injury to the party who acted in reliance on the oral promise is so great that enforcement of the statute of frauds would be unconscionable, the promisor should be *685 estopped from reliance on the statute of frauds” (Matter of Hennel, 29 NY3d 487, 494 [2017]). The Court admonished “[t]he standard for unconscionability where one party is seeking to avoid the statute of frauds must be equally demanding, lest the statute of frauds be rendered a nullity” (id. at 495).
Given the recent vintage of the Court of Appeals’ decision, there is no precedent upon which to draw. Thus, the court must begin with the recognition that while unconscionability is a familiar concept, in the context of the statute of frauds, it has a different meaning. The doctrine of promissory estoppel stems from common-law fraud. The doctrine “prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice” (Rothschild v Title Guar. & Trust Co., 204 NY 458, 464 [1912]). When one person injures another by inducing them to trust their oral promise, such conduct invariably seems unconscionable. Indeed, one might suppose that the law would condemn all acts of fraud as unconscionable, not so. In this context, fraud is only unconscionable when someone is hurt really badly, i.e., where “the injury . . . is so great that enforcement of the statute of frauds would be unconscionable” (Matter of Hennel, 29 NY3d at 494).
The court must determine if letting Commercial quit the lease under the very month to month theory that Remsen espoused and then, only after Commercial vacated, demanding strict compliance with the written lease inflicted upon Commercial an unconscionable injury. Whether an economic injury is so egregious as to be unconscionable depends on the circumstances of the injured party. A few dollars lost for an economically frail person or company might be ruinous, a million dollars to a billionaire or a Fortune 500 company, insignificant.
In this case both parties were business entities seeking legal advantage in the twilight of the tenancy rather than an unsophisticated residential tenant against an experienced landlord. The record is void as to Commercial’s fiscal health other than that Commercial had already paid 69 months’ worth of rent. Since Remsen only seeks April’s rent, Commercial suffered an injury that amounts to l/69th of the value of the lease payments already made. The court finds that the magnitude of the injury not be so severe as to be unconscionable. Therefore, despite Remsen’s oral representation that Commercial was a monthly tenant, the written lease governs this case.
Commercial both vacated the office and stopped paying rent in March 2017. Once a tenant abandons the leased premises *686 prior to the expiration of a written lease, “the landlord [is] within its rights under New York law to do nothing and collect the full rent due under the lease” (Holy Props. v Cole Prods., 87 NY2d 130, 134 [1995]). Alternatively, the landlord “could accept the tenant’s surrender, reenter the premises and relet them for its own account thereby releasing the tenant from further liability for rent” (id.). To Remsen’s credit, it took occupancy of the office at the end of April thereby mitigating damages and saving Commercial from owing May 2017’s and June 2017’s rent. Thus, Commercial owes only April 2017’s rent of $2,850.
Remsen also seeks May 2016’s rent. Remsen had a right to collect that month’s rent. The undisputed evidence established that Remsen told Commercial that it did not have to pay May 2016’s rent—this constituted a waiver. Waiver is the intentional and voluntary relinquishment of a legal right which, but for the waiver, would have been enforceable. Waiver is a unilateral act and rests not upon consideration, assent or reliance by the other party (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006]). Here the evidence established that Remsen’s waiver of May 2016’s rent was un-mistaken, unambiguous and unrelenting. Moreover, the fact that the waiver was oral rather than written makes no difference. There is a distinction between an oral agreement modifying the terms of a prior written agreement (which was barred by the lease) and an oral waiver of a right possessed under a written agreement (which is effective upon its utterance). Commercial is not responsible for May 2016’s rent.
Finally, Commercial seeks the return of its security deposit. General Obligations Law § 7-105 governs the return of security deposits by a subsequent landlord.[3] The law requires that security deposits must be turned over to a purchaser of the *687 premises or assignee of the lease (Gerel Corp. v Prime Eastside Holdings, LLC, 12 AD3d 86, 90 [1st Dept 2004]). In this case, R&B had a duty to turn over Commercial’s deposit to Remsen at the time of the foreclosure. R&B never met its legal obligation; Remsen never got the security deposit.
This is not good news for Commercial—“a successor landlord . . . cannot be held liable for the return of security deposit funds that were not transferred to it by . . . the original landlord” (R.J. Hyland, Inc. v Love Family Sports, LLC, 102 AD3d 939, 942-943 [2d Dept 2013]). Therefore, since the security deposit was not transferred to the foreclosure sale purchaser (Remsen), neither Remsen nor any subsequent owner/lessor has liability to Commercial for the deposit’s return unless the lease provides to the contrary (Matter of Central Sav. Bank v Fashoda, 94 AD2d 927, 928 [3d Dept 1983], affd 62 NY2d 721 [1984]). Thus, without more, R&B, not Remsen, is responsible to return the security deposit.
But there is more. Remsen in addition to purchasing the property at a foreclosure sale also decided to execute an assignment agreement with R&B (exhibit 2). In the agreement, Remsen consented to “be responsible for assuming and performing all the other duties and obligations required under the terms and conditions of the lease” {id. 1 9).
This language transferred the duty to return the security deposit from R&B to Remsen. Commercial’s obligation to pay the deposit arose under the lease. Concomitantly, its return is a lease obligation which was required to be performed by R&B. Although Remsen had no duty to return the security deposit, it chose to assume R&B’s obligations and duties that arose under *688 the lease. Therefore, Remsen owes Commercial the security deposit in the amount of $2,250.
Therefore, it is ordered that Commercial Investigations LLC pay 130 Remsen $600 which constitutes April 2017’s rent ($2,850) less the security deposit ($2,250) together with the filing fee of $45.

. The provision provides:
“Lessor shall have the right to assign its interest in this Lease upon written notice to the Lessee ... in the event of any transfer of the Lessor’s interest in this Lease the transferor shall cease to be liable, and shall be released from all liability for the performance or observance of any agreements or conditions on the part of the Lessor to be performed or observed provided that from and after said transfer, . . . the transferee shall assume and be liable for the full performance and observance of said agreement and all conditions.”

. Theoretically, a tenant who does not receive notice of the rent assignment may pay rent to the wrong party. That is, a tenant who lacks notice may pay his former landlord rather than the assignee (the new landlord). However, such harm is only theoretical. New York law saves the tenant from paying double rent. A tenant that pays his rent to his old landlord because he lacked notice of assignment is relieved from all liability for payment of rent to new landlord. (Callanan v Edwards, 32 NY 483, 486 [1865]; cf. Whitehall Tenants Corp. v 3333 Operating Corp., 190 AD2d 595, 595 [1st Dept 1993] [even when a tenant pays old landlord, if tenant is not held in default by the new landlord, “any purported lack of notice would not render the assignment ineffective”].)

. General Obligations Law § 7-105 provides as follows:
“1. Any person, firm or corporation and the employers, officers or agents thereof, whether the owner or lessee of the property leased, who or which has or hereafter shall have received from a tenant or licensee a sum of money or any other thing of value as a deposit or advance of rental as security for the full performance by such tenant or licensee of the terms of his lease or license agreement, or who or which has or shall have received the same from a former owner or lessee, shall, upon conveying such property or assigning his or its lease to another ... at the time of the delivery of the deed or instrument or assignment or within five days thereafter . . . deal with the security deposit as follows:
*687 “Turn over to his or its grantee or assignee . . . the sum so deposited, and notify the tenant or licensee by registered or certified mail of such turning over and the name and address of such grantee, assignee, purchaser or receiver.
“2. Any owner or lessee turning over to his or its grantee, as-signee . . . the amount of such security deposit is hereby relieved of and from liability to the tenant or licensee for the repayment thereof; and the transferee of such security deposit is hereby made responsible for the return thereof to the tenant or licensee, unless he or it shall thereafter and before the expiration of the term of the tenant’s lease or licensee’s agreement, transfer such security deposit to another, pursuant to subdivision one hereof and give the requisite notice in connection therewith as provided thereby . . .
“3. Any failure to comply with this section is a misdemeanor.”